J. S42041/15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| BILLY RAY INMAN JR., | : | |
| | : | |
| Appellant | : | No. 54 EDA 2015 |

Appeal from the Judgment of Sentence November 15, 2013
In the Court of Common Pleas of Northampton County
Criminal Division No(s).: CP-48-CR-0000904-2013

BEFORE: SHOGAN, MUNDY, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.: **FILED SEPTEMBER 11, 2015**

Appellant, Billy Ray Inman, Jr., appeals from the judgment of sentence entered in the Northampton County Court of Common Pleas following his jury conviction of simple assault, terroristic threats, robbery/threatening another with or intentionally putting another in fear of immediate serious bodily injury, theft by unlawful taking, and theft by receiving stolen property[1] ("RSP"). He challenges: (1) the sufficiency and weight of the evidence for robbery; and (2) the court's denial of his motion to suppress the victim's in-court identification of him, on the ground that it was tainted. We affirm.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2701(a)(3), 2706(a)(1), 3701(a)(1)(ii), 3921(a), 3925(a).

The trial court summarized the underlying facts as follows. ***See*** Trial Ct. Op., 3/12/15, at 1-3. On January 15, 2013, at approximately 11:55 p.m., Mittie Merkle was working alone at a 7-Eleven store. A man, later identified as Appellant, entered the store; he had dreadlocks and wore a hat, sunglasses, and a black jacket with stripes on the sleeves. He went to the counter, "put his right hand in his pocket" as if "he had a gun in his pocket," and on the counter placed a plastic bag and a note which stated, "[G]ive me all your money or you will die." ***Id.*** at 1. Merkle gave the man money from the register. Although she did not see a gun, she believed he had a gun and would kill her if she did not comply. The man left and Merkle immediately called 911, providing a physical description of the perpetrator. Surveillance video, played at trial, showed Merkle had her "hands up" during the incident. N.T., Jury Trial Vol. II, 8/6/13, at 44.

Bethlehem police officers responded to the store. At trial, Officer Kelly Martin and Detective Christopher Beebe described Merkle as "shaken," scared, nervous, and upset. ***Id.*** at 76, 96. They, along with Officer Christopher Kopp, watched the store's video surveillance. "No suspects were located that evening." Trial Ct. Op. at 2.

Six days later, on January 21, 2013, Officer Kopp responded to a call about a male believed to match the description of the male in the 7-Eleven robbery. Officer Kopp saw a man wearing a black jacket with stripes on the shoulders, "a military-style chevron on the left sleeve and a white emblem

on the chest." *Id.* The man had dreadlocks, wore a hat similar to the hat in the 7-Eleven robbery, and "appear[ed] to be the same size and shape as the person in the [7-Eleven] video." N.T., 8/6/13, at 88. The man said he lost his keys and was looking for them. Officer Kopp requested his identification, which indicated he was Appellant. The officer, however, had to respond to another call and left, but later relayed this information to Detective Beebe.

Meanwhile, on January 23, 2013, Merkle saw a photograph on the Internet, on the Bethlehem Township website, of an unidentified person alleged to have committed a retail theft at a Walmart store in Bethlehem Township. Trial Ct. Op. at 3; *see* N.T., 8/6/13, at 5. "The photograph was captured by the security camera as the alleged perpetrator was walking through the Walmart store." Trial Ct. Op. at 8.

> Merkle immediately recognized the man in the photographs as the person who robbed her at the 7-Eleven and contacted Detective Beebe[. She went] to the police department where she·was shown a photo lineup . . . contain[ing] eight photographs. Ms. Merkle recognized [Appellant] as the person that robbed her within "one minute."

*Id.* at 3 (citation to record omitted).

Appellant was charged, and at the preliminary hearing, Merkle identified him in court as the perpetrator. *Id.* Subsequently, Appellant filed a motion to suppress Merkle's identification of him, on the ground that it was tainted by her viewing the Walmart photograph on the Bethlehem Police Department website. The trial court heard argument on August 5, 2013,

and ruled the Walmart photograph itself was admissible, but disallowed any reference to why it was taken or where it "[came] from." N.T. Trial Vol. I, 8/5/13, at 5.

The case then immediately proceeded to a jury trial. The Commonwealth called as witnesses Merkle and the three officers mentioned above. Appellant did not testify, but called his girlfriend, who testified she was at home with Appellant and her twenty-year old nephew when the robbery occurred.[2] The Commonwealth then called her nephew as a rebuttal witness, and he testified Appellant was not at home at that time.

The jury found Appellant guilty of robbery, simple assault, terroristic threats, theft by unlawful taking, and receiving stolen property. On November 15, 2013, the court conducted sentencing for this matter as well as an unrelated guilty plea to retail theft.[3] In this case, the court imposed the following sentences: (1) ten to twenty years' imprisonment for robbery, pursuant to the mandatory sentencing provision of ten years for a "second strike" offense;[4] (2) one to two years for terroristic threats; (3) one to two

---

[2] Appellant's girlfriend testified she could see the 7-Eleven store from her apartment window. N.T., 8/6/13, at 129.

[3] It is not clear whether the retail theft plea was related to the Walmart photo.

[4] **See** 42 Pa.C.S. § 9714(a)(1) (setting minimum sentence of ten years' imprisonment for any person convicted of "crime of violence," if at time of commission of current offense, person was previously convicted of crime of

years for simple assault; (4) six month to two years for theft by unlawful taking, and (5) six months to two years for RSP. These sentences were ordered to run concurrently with each other, but consecutive to the sentence of one to two years' imprisonment for the retail theft conviction.

On November 22, 2013, Appellant filed a timely post-sentence motion, which was not ruled upon. One year later, on November 24, 2013, Appellant filed a timely *pro se* Post Conviction Relief Act[5] petition to reinstate his direct appeal rights *nunc pro tunc*.[6] The court appointed counsel, reinstated his direct appeal rights, and issued an order to file a Pa.R.A.P. 1925(b) statement. However, the court then directed Appellant to file another post-sentence motion and brief. Appellant complied, arguing, *inter alia*, the verdict was against the weight of the evidence and the court erred in denying his motion for acquittal and admitting photographs of him at the scene of a different crime.

Appellant's first issue before this Court is a two-fold challenge to the

---

violence). Appellant had a 1985 North Carolina conviction of robbery, a felony of the first degree. N.T. Sentencing, 11/15/13, at 4.

[5] 42 Pa.C.S. §§ 9541-9546.

[6] We note the post-sentence motion should have been deemed denied by operation of law after 120 days, and the court clerk should have entered an order to this effect. **See** Pa.R.Crim.P. 720(B)(3)(a), (c). Appellant could have then taken an appeal from that denial.

sufficiency and weight of the evidence for robbery.[7]  He first avers there was no direct evidence that he placed Merkle in fear of immediate serious bodily injury.  In support, he maintains Merkle "stated she did not see a gun during [the] encounter," "did **not** state that the perpetrator spoke to her in a threatening manner," "even walked towards him during [the] encounter," "even completed her shift that night," "had previously stated at the preliminary hearing she was not scared," and "was not nervous in testifying against him at [t]rial."  Appellant's Brief at 10 (emphasis added).  Furthermore, Appellant claims, "Although the note stated the victim produce funds or suffer death [sic], the victim did not take the threat seriously."  *Id.* at 11.

Second, Appellant asserts the evidence was not "sufficient beyond a reasonable doubt [that he] actually was the perpetrator of the robbery."  *Id.* at 9.  In support, he cites Merkle's testimony that the perpetrator wore a hat and sunglasses and "was in and out real quick."  *Id.*  Appellant also emphasizes Merkle's preliminary hearing and trial testimony that when she saw the photograph on the Internet, "she was unable to identify the perpetrator by face but by jacket."  We find no relief is due.

We note the relevant standards of review:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner,

---

[7] Appellant presents these as three separate issues in his appellate brief.

there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. . . . Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. . . . [T]he entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Brown*, 23 A.3d 544, 559-60 (Pa. Super. 2011)

(citations omitted).

"For this Court to reverse the jury's verdict on weight of the evidence grounds, we must determine that the verdict is so contrary to the evidence as to 'shock one's sense of justice.'"

Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Id.* at 557-58.

Appellant was convicted under the following subsection of the robbery statute: "A person is guilty of robbery if, in the course of committing a theft,

he . . . threatens another with or intentionally puts him in fear of immediate serious bodily injury[.]" **See** 18 Pa.C.S. § 3701(a)(1)(ii).

As stated above, in support of his claim that he did not threaten Merkle, Appellant cites selected statements in her trial testimony. However, we note the context in which Merkle testified she walked toward Appellant:

> [Commonwealth:] Were you right at the counter when [the perpetrator gave you the demand note], or were you a few steps away?
>
> [Merkle:] I was a few steps away.
>
> Q. And what did you think when he came and put something on the counter?
>
> A. That it was a robbery.
>
> Q. So did you walk towards him?
>
> A. Yes.
>
> Q. And what happened when you walked towards him?
>
> A. I seen the note, I opened the register, and I gave him the money that was in the register and he asked me if there was any money [sic]. I said no, then he left.

N.T., 8/6/13, at 30-31.

In addition, Merkle had testified she was the "cashier/manager" and was working alone, and when asked why she continued her shift after the robbery, she replied, "Because there was nobody else available." **Id.** at 28, 50. Officer Martin and Detective Beebe described Merkle after the robbery as "shaken," "somewhat scared and nervous" and "upset." **Id.** at 76, 96. Nevertheless, Merkle's reactions during and after the incident, as well her

demeanor at trial, alone are not dispositive of whether Appellant may be convicted under Subsection 3701(a)(1)(ii). The Commonwealth's evidence would support a jury finding that Appellant threatened Merkle with immediate serious bodily injury; the statute does not require that she in fact was in fear. *See* 18 Pa.C.S. § 3701(a)(1)(ii).

Significantly, Appellant wholly ignores Merkle's clear testimony that Appellant "put his right hand in his pocket, and it looked like he had a gun in his pocket," and that he presented a note which stated, "Give me all your money or you will die." N.T., 8/6/13, at 30, 31. She testified she believed he had a gun and that if she did not comply, he would kill her. *Id.* at 32. The jury was free to believe all, part, or none of the testimony, and we do not reweigh the witnesses' credibility. *See Brown*, 23 A.3d at 557-58. We do not find the jury's verdict so contrary to the evidence as to shock the conscience. *See id.* at 544.

With respect to Appellant's challenge to Merkle's identification of him as the perpetrator, we consider that defense counsel thoroughly cross-examined her. Merkle responded to defense counsel's questions about the photo she saw on the Internet as follows:

> [Appellant's counsel:] Did you identify that person by the jacket or by his face?
>
> [Merkle:] The jacket, the face, the way he's built, the height.

* * *

Q. Could you see his face?

A. A little bit.

N.T., 8/6/13, at 63. Defense counsel then confronted Merkle with her preliminary hearing testimony, which was as follows:

[Q.] "So when you saw the picture on the web site, did you identify him by face or by the jacket?" . . .

[A.] "By the jacket."

*Id.* at 64. Defense counsel then elicited, at trial, three more confirmations from Merkle that she identified Appellant in the Internet photo by his jacket. *Id.* at 69, 70, 71. On redirect examination, however, Merkle testified as follows:

[Commonwealth: W]hen you called Detective Beebe to tell him that you recognized the person who had robbed from pictures on the Internet—

\* \* \*

Q. —you told Detective Beebe that it was the same guy that robbed you because he matched the description?

A. Yes.

Q. And, at the preliminary hearing, you indicated that he was the same build, same hair, same jacket?

A. Yes.

Q. Okay. Now, in the photo lineup . . . [Appellant] was not wearing the jacket?

A. No.

*Id.* at 71-72.

Furthermore, Appellant wholly ignores that Officer Kopp, who watched the store's surveillance video on the night of the robbery, also identified Appellant. He testified that six nights after the robbery, on January 21, 2013, he responded to a call about a man matching the description of the robber. *Id.* at 86. Officer Kopp observed the man, Appellant, wearing "the same jacket" and "appear[ing] to be the same size and shape as the person in the video." *Id.* at 87-88. Upon the officer's request, Appellant produced his photo identification. *Id.* at 89. At trial, Officer Kopp identified Appellant as the person he encountered on January 21st. *Id.* at 91.

It is not disputed that Appellant presented a note to Merkle which stated, "Give me all your money or you will die," and that he put his hand in his pocket as if he had a gun. Viewing all the evidence presented at trial in the light most favorable to the Commonwealth, we hold there was sufficient evidence for the jury to find Appellant guilty of robbery/threatening another with serious bodily injury. *See* 18 Pa.C.S. § 3701(a)(1)(ii); *Brown*, 23 A.3d at 559-60. We likewise hold the jury was free to weigh Merkle's and Officer Kopp's identification of him as the perpetrator, and we do not supplant the jury's finding with our own. *See Brown*, 23 A.3d at 557-58. Accordingly, we do not disturb the court's denial of Appellant's weight of the evidence claim.

Appellant's second claim in this appeal is that the trial court erred in denying his motion to suppress Merkle's identification of him and in

permitting the Commonwealth to display the Internet photograph of him. He alleges Merkle's identification was tainted by the Internet photograph of him taken at Walmart. Appellant maintains that at trial, Merkle testified the perpetrator in the 7-Eleven robbery wore sunglasses and a hat and "[s]he did not have a chance to focus on his facial features since she testified she was focused on the thought maybe he had a gun[.]" Appellant's Brief at 16. He avers Merkle's identification of the "photograph on a website implicating him in a separate crime was suggestive and prejudicial." *Id.* at 15. Appellant reiterates Merkle "admitted she identified the photograph . . . by the jacket, not the face," and asserts her "perception . . . continued when she identified him" in the photo array eight days after the robbery. *Id.* at 17. He concludes there was no "independent basis for [Merkle's] identifications of" him. *Id.* We find no relief is due.

We note the standard of review for a suppression issue:

> "Our standard of review of a denial of suppression is whether the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are free from error." Our scope of review is limited; we may consider "only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole." "Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts."

*Commonwealth v. Moye*, 836 A.2d 973, 976 (Pa. Super. 2003) (citations omitted).

Our Supreme

> Court has recognized that identifications made only after a witness has seen the defendant in the media might prove to be suggestive. . . .

> The problem with an impermissible suggestive identification is the potential for misidentification, resulting in a due process violation if that identification is admitted at trial. Following a suggestive pre-trial identification, a witness will not be permitted to make an in-court identification unless the prosecution establishes by clear and convincing evidence that the identification was not induced by events occurring between the time of the crime and the in-court identification. Thus, an in-court identification following a suggestive out of court identification will be admissible only if, considering the totality of the circumstances, it is determined that the in-court identification had an origin sufficiently distinguishable to be purged of the primary taint.

> In determining whether an independent basis for identification exists, we must consider the following factors: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. Our scope of review limits our consideration to a determination of whether sufficient evidence has been presented to support the independent basis for the in-court identification.

**Commonwealth v. Carter**, 643 A.2d 61, 71 (Pa. 1994) (citations omitted).

In **Carter**, the defendant "challenge[d] the trial court's refusal to suppress his in court identification by the victim" arguing the victim's "recognition of him [was] tainted by her review of a newspaper article

containing his picture two days after the [incident]."[8]  *Id.* at 71.  Our Supreme Court first found the victim's "positive identification of the [defendant] after seeing his picture in the newspaper an 'impermissible suggestive identification.'"  *Id.* (noting identifications made only after witness has seen defendant in media might prove to be suggestive). However, the Court found the victim "had ample opportunity to view the" defendant during the incident, "gave accurate and consistent descriptions of the [defendant] to the police immediately after the attack," and that these descriptions were "consistent with her in-court identification and evidence that she could identify the [defendant] from his presence at the crime scene." *Id.* at 71-72.  Furthermore, the Court was

> convinced of the certainty of [the victim's] identification. [The victim] testified without hesitation that she saw the faces of her assailants[,] she was "certain" of the identities of the individuals who were outside of the car[ and] she could identify the [defendant] prior to having seen his picture in the paper.

*Id.* at 72.  The Court thus concluded the victim "'crystalize[d]' her identification of the [defendant] as a result of the assault and not as a result of the newspaper photograph." *Id.*  The Court thus held she "had sufficient independent basis for her in-court identification to purge the taint of the suggestive pre-trial identification." *Id.* at 71.

---

[8] The **Carter** decision did not state whether the newspaper article and photograph were related to the victim's assault.  **See Carter**, 643 A.2d at 71.

In denying Appellant's suppression motion, the trial court considered the following. During the robbery, Merkle and Appellant were within a few feet of each other and thus Merkle was "in a good vantage point to observe [Appellant's] physical appearance. Trial Ct. Op. at 12. Immediately after the robbery, Merkle described the perpetrator "as a black male, approximately 5'9" tall, medium build, wearing a black jacket with stripes, a white hat with sunglasses and dreads." *Id.* Within a week of the robbery, Merkle recognized Appellant in a photograph that accompanied

> a news release from the Bethlehem Township Police Department [about] an alleged retail theft at the Walmart in Bethlehem Township. The . . . photograph [was] of an unidentified male who was alleged to have committed the retail theft[,] unrelated to the charges in the present case. The photograph was captured by the security camera as the alleged perpetrator was walking through the Walmart store[ and] did not depict [Appellant] engaged in any obvious criminal activity. Rather, it merely depicted [Appellant] walking face forward, wearing his very distinct black jacket with white stripes and other distinctive markings. There was nothing in the news release that implicated the robbery at the 7-Eleven which occurred miles away in a different jurisdiction[.]

*Id.* at 7-8.

We find no error in the court's analysis or its conclusion that "there existed a very strong, independent basis for Ms. Merkle's in-court identification of [Appellant] outside the photograph viewed on the Internet." *See id.* at 12. Accordingly, we do not disturb the court's ruling.

Judgment of sentence affirmed.

J. S42041/15

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/11/2015